# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

CAROL A. VAN HOOGSTRAAT,               )
                                        )
      Plaintiff,                     )
                                        )
  vs.                                )      Case No. 4:11-CV-1852-JAR
                                        )
THE PRUDENTIAL INSURANCE CO.           )
OF AMERICA,                             )
                                        )
      Defendant.                     )

## MEMORANDUM AND ORDER

This matter is before the Court on cross motions for summary judgment filed by plaintiff

Carol Van Hoogstraat ("Plaintiff") and defendant The Prudential Insurance Company of America

("Prudential"). Plaintiff filed this action challenging the denial of accidental death benefits under

a plan sponsored by her husband's former employer, Chrysler Motors Company, LLC ("Daimler

Chrysler"), and insured by the Prudential Insurance Company of America ("Prudential") ("the

Plan"). The Plan is governed by the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1001, et seq. The motions are fully briefed and ready for disposition.

For the following reasons, the Court will grant Prudential's motion for summary judgment and

deny Plaintiff's motion for summary judgment.

### Factual Background[1]

---

[1]The facts are taken from Prudential's Statement of Facts in Support of its Motion for
Summary Judgment on the ERISA Record (Doc. No. 32) and Additional Statement of Facts filed
in connection with its Opposition to Plaintiff's Motion for Summary Judgment. (Doc. No. 35)
Both parties filed statements of uncontroverted material facts in support of their motions.
Prudential filed its response to Plaintiff's Statement of Uncontroverted Material Facts (Doc. No.
35); however, Plaintiff failed to file a response to Prudential's Statement of Facts. Local Rule
4.01(E) provides with respect to summary judgment motions:

    A memorandum in support of a motion for summary judgment shall have attached
    a statement of uncontroverted material facts, set forth in a separately numbered

Daimler Chrysler sponsors optional life insurance and accidental death and dismemberment coverage ("AD&D") for its Five Star Dealer-Owners, under an ERISA-governed plan insured by Prudential under Group Contract policy number G014100-MI (the "Plan"). (D999-1021; D1073-1131)[2] Plaintiff's husband, John Van Hoogstraat ("Decedent") was the owner of Royal Gate Dodge, and a participant in the Plan. (D45; see also Complaint ¶ 6, Answer ¶ 6) As an employee and Plan participant, Decedent elected optional life insurance coverage and AD&D coverage under the Group Contract policy between Prudential and Daimler Chrysler. He initially elected this coverage on or about February 2, 1998. (D1-13.) On September 7, 2008, Decedent increased his AD&D coverage from $750,000 to $1,000,000, the maximum amount of AD&D coverage under the terms of the Plan. (See D4; D45; D236; D1085.) This increase took effect on October 15, 2008. (Id.) As of a statement dated September 11, 2009, Decedent had elected optional life insurance coverage for $2,500,000, and AD&D coverage for $1,000,000. (D45; see also D4.) Decedent committed suicide on September 28, 2009, by a self-inflicted gunshot to the head. Plaintiff filed a claim for life insurance benefits

---

paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E). As a result of Plaintiff's failure to submit any response, Plaintiff has not met the requirements of Local Rule 4.01(E), and is deemed to have admitted all facts in Prudential's statements of uncontroverted facts. Turner v. Shinseki, 2010 WL 2555114, at *2 (E.D.Mo. June 22, 2010) (citing Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D.Mo.1999), aff'd, 232 F.3d 907 (8th Cir.2000), cert. denied, 531 U.S. 877, 121 S.Ct. 184, 148 L.Ed.2d 127)).

[2]The administrative record created during the claims process is referenced as "D--".

with Prudential, and Prudential paid Plaintiff the full amount of the life insurance policy, $2,500,000. (D51; D238) Plaintiff also filed a claim for AD & D benefits. (D51)

Under the Plan, benefits for "accidental Loss," including loss of life, are payable only if:

(1) The person sustains an "accidental bodily Injury" while a Covered Person;
(2) The Loss results directly from that Injury and from no other cause;
(3) The Loss is due to an Accident; and
(4) The person suffers the Loss within 365 days after the Accident.

(D1107). A "Loss" of life is not covered if it results from, among other things, (1) suicide or attempted suicide, while sane or insane; or (2) intentionally self-inflicted injuries. (D1109).

Prudential denied Plaintiff's application for AD&D benefits after determining that Decedent's death was the result of "suicide while sane" and thus not an "accidental bodily injury" under the terms of the Plan or Missouri law, Mo.Rev.Stat. § 376.620.[3] (D199-202; D226-229). Plaintiff appealed this determination on September 13, 2010 (D236-238; D250; D255-256) and again on September 7, 2011. (D846) In each instance, Prudential upheld its decision to deny her claim. (D825-30; D871-876) After the final denial of her claim for AD&D benefits, Plaintiff brought this action challenging the denial pursuant to 29 U.S.C. § 1132(a)(1)(B).

**Legal Standard**

---

[3]It is settled law that the phrase "accidental bodily injury" does not include suicide while sane. See, Harris v. General American Life Ins. Co., Inc., 902 F.Supp. 1007, 1010 (E.D. Mo. 1995) (citing O'Boyle v. Life Ins. Co., 299 F.Supp. 704, 705 (W.D. Mo. 1969); Miller v. Home Ins. Co., 605 S.W.2d 778, 780 (Mo. 1980); Skaggs v. Aetna Life Insurance Co., 884 S.W.2d 45, 46 (Mo.Ct.App. 1994)). Because suicide while sane is not a covered risk, "the effect of the exclusionary clause and of § 376.620 are irrelevant to a determination of the cause." Miller, 605 S.W.2d at 780.

§ 376.620.1 provides that "[a]ny life insurance or certificate issued or delivered in this state, may exclude or restrict liability of death as the result of suicide in the event the insured, while sane or insane, dies as a result of suicide within one year from the date of the issue of the policy or certificate. Any such exclusion or restriction shall be clearly stated in the policy or certificate."

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal-Mogul Ignition Co., 519 F.Supp.2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir. 1983). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir.1993) (quoting Anderson, 477 U.S. at 251-52)).

**Discussion**

In support of her motion, Plaintiff takes the position that her husband was insane at the time of his suicide and his death was, therefore, an accident as that term is understood under the

Plan. Prudential argues that because Decedent died of an intentional self-inflicted gunshot wound, his death, by definition, was not an "accident" to qualify for the accidental death benefits sought. Prudential also argues Plaintiff has not established that she is the proper beneficiary of the policy benefit because Decedent assigned his benefit to his employer as a lien on his car dealership.

**A. ERISA Standard of Review**

The parties disagree on the standard of review this Court is to apply in reviewing the denial of benefits. Plaintiff argues de novo review is required, whereas Prudential argues the case should be reviewed under an "arbitrary and capricious" standard. Under a de novo review, no deference is given to the administrator's decision. Davidson v. Prudential Ins. Co. of Am., 953 F.2d 1093, 1095 (8th Cir.1992). In contrast, when reviewing for abuse of discretion, the Court will uphold the administrator's decision if it is reasonable, meaning it is supported by substantial evidence. See, Green v. Union Security Ins. Co., 646 F.3d 1042, 1050 (8th Cir. 2011) (quoting Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887, 893 (8th Cir. 2009)).

"Under ERISA, the standard of review of a denial of benefits claim turns on whether the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Wade v. Aetna Life Insurance Co., 2011 WL 4369423, at *13 (E.D. Mo. Sept. 19, 2011), aff'd, 684 F.3d 1360 (8th Cir. 2012) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). Where the plan administrator has such discretionary authority, judicial review is limited to an abuse of discretion standard. Id.[4]

Here, the Plan explicitly provides that Prudential, as "Claims Administrator," "has the

---

[4]The Eighth Circuit has found that the abuse of discretion standard and the arbitrary and capricious standard are synonymous and can be used interchangeably. Jackson v. Prudential Ins. Co. of America, 530 F.3d 696, 701 n.6 (8th Cir. 2008).

sole discretion to interpret the terms of the Group contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." (D001128) Based on this language, Prudential clearly had discretionary authority with respect to its decision to deny Plaintiff's claim and its handling of her appeals. See, Jackson, 530 F.3d at 700 (holding that identical language granted discretionary authority both to determine benefit eligibility and construe the terms of the group contract).

Plaintiff argues the standard of review is de novo because Prudential's denial was based on its construction of Missouri law, citing Riley v. Sun Life and Health Insurance, 657 F.3d 739 (8th Cir. 2011) and Meyer v. Duluth Building Trades Welfare Fund, 299 F.3d 686 (8th Cir. 2002). "Where a plan's decision ... is based on its construction of existing law, the plan's interpretation of a controlling principle of law is reviewed de novo." Riley, 657 F.3d at 741.

In Riley, the administrator offset a veteran's VA benefits from his long term disability benefits under a plan provision allowing offsets from "other income" sources. The plan defined "other income" as any amount of disability or retirement benefits under the Social Security Act (SSA), the Railroad Retirement Act (RRA), or "any other similar act or laws." 657 F.3d at 740-41. The administrator concluded that the Veterans' Benefits Act (VBA) is similar to the SSA and the RRA. Because the plan's decision was based on its construction of existing law, the court reviewed the legal correctness of the interpretation of the offset provision de novo and concluded that as a matter of statutory construction, VA benefits do not derive from an act that is "similar to" the SSA or RRA. Id. at 742. The denial of benefits was reversed.

In Meyer, the plan denied benefits under an exclusion for injury "which would be covered under Workers' Compensation, or similar law." 299 F.3d at 688. The administrator explained to the claimant that under its interpretation of the Minnesota Workers' Compensation

Act, the claimant could have been covered by the workers compensation carrier if he had so elected. Id. The Eighth Circuit undertook a de novo interpretation of the Workers' Compensation Act and determined the claimant was not eligible for benefits for injuries he suffered while doing a brief, unpaid task at his wife's business because he was not an "employee." Again, the denial of benefits was reversed.

Unlike in Riley and Meyer, where the denial of benefits was based on the administrator's construction of existing law, the denial of Plaintiff's claim was based on Prudential's determination that Decedent was sane when he took his life. Such a determination is purely factual in nature and is, therefore, subject to review under an abuse of discretion standard. See, e.g., Miles v. AIG Life Insurance Co., 2005 WL 1038668, at *4 (E.D. La. April 22, 2005) (denial of accidental death benefits based on administrator's determination that decedent acted intentionally when he took his own life deemed a factual determination).

**B. Abuse of Discretion Standard**

"In reviewing for an abuse of discretion, the administrator's decision should be reversed 'only if it is arbitrary and capricious.' " Green, 646 F.3d at 1050 (internal quotation omitted). "The administrator's decision should be affirmed if it is reasonable, meaning it is supported by substantial evidence." Id. (quoting Groves v. Metro. Life Ins. Co., 438 F.3d 872, 875 (8th Cir.2006)). Substantial evidence is "more than a scintilla but less than a preponderance." Id. (quoting Midgett, 561 F.3d at 897). Ultimately, "[t]he requirement that the plan administrator's decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Green, 646 F.3d at 1050 (quoted case and internal quotation marks omitted).

**C. Determination Regarding Plaintiff's Claim for AD&D Benefits**

The Court now turns to the ultimate issue in this case, whether Prudential abused its discretion when it denied Plaintiff's claim for AD&D benefits. Plaintiff argues that Prudential's investigation into the facts and circumstances surrounding her husband's death was inadequate. The Court finds, based on the administrative record that was before Prudential, there was much more than a "scintilla of evidence" supporting Prudential's decision to deny Plaintiff's claim on the grounds that Decedent's death was the result of "suicide while sane" and thus not an "accidental bodily injury" under the terms of the Plan or Missouri law. Prudential's decision was supported by substantial evidence, and "a reasonable person *could* have reached a similar decision." See Green, 646 F.3d at 1050.

First, Prudential's Special Investigations Unit (SIU) obtained and reviewed a number of documents regarding Decedent's suicide, including the death certificate (D19), the autopsy and toxicology reports, which showed no alcohol or recreational drugs in Decedent's body at the time of the suicide (D205-211), and the investigative report from the Medical Examiner's Office. (D193-196)

According to the investigative report, Plaintiff told Investigator Randall Hays that her husband seemed "normal" when he left for work at approximately 8:30 a.m. on September 28, 2009. (D224) Hays determined that Decedent left his wedding band, ring and watch at home that morning. (D225) He made a deposit at his bank at 9:28 a.m., and then went to Wal-Mart in Chesterfield where he purchased ammunition for his gun at 10:06 a.m. (D223-24) After purchasing the ammunition, Decedent drove to the Stella Blues Bar, which he owned. (D223-25) Hays further determined that Decedent sent a text message to Plaintiff indicating that he planned to kill himself and apologizing. (D223-224; see also D219-20 ("The message stated that John was sorry and apologized to her for past disagreements they had during their marriage.")) After receiving the text message from her husband, Plaintiff contacted a friend, Jim

- 8 -

Bowen, who went to the tavern with her and discovered Decedent's body. (D223) Decedent's actions were captured on the tavern's security camera videotape.[5] (D223-225; D219-220)

The investigative report also references a preliminary psychological profile revealing numerous civil actions with Decedent named as the defendant, a recent arrest for driving a boat at Lake of the Ozarks while intoxicated and crashing into another boat, and recent health problems. (D225) During the investigation, Plaintiff indicated her husband had been "under a lot of stress." (D224) Family friend Bowen also indicated Decedent had been under a "great deal of stress, financially." (D225)

Second, Prudential's Medical Director, Dr. Kowalski, reviewed all of Decedent's medical records and noted there was no diagnosis of anything other than depressive disorder and anxiety in his records, and no more serious diagnoses during the three months after Decedent's first suicide attempt in January 2009. (D198; D201; D819-820) Dr. Kowalski considered the fact that Plaintiff reported her husband acted "normal" on the day of the suicide, the logical fashion in which he carried out his plan to kill himself, and that no alcohol or drugs were involved. (D198; D201; D819-820) Dr. Kowalski concluded "with a reasonable degree of

---

[5]Hayes reviewed the videotape and described the specific events from the video in detail as follows:

> The video showed the deceased getting the chair, sending the text message, walking around and arranging the chair to be in the view of the camera. He practices for several minutes, positioning the weapon under his chin, in his mouth, and even sizes up placing the gun against his chest, but cannot reach the trigger in that position. After several dry runs at placing the muzzle beneath his chin, he loaded the weapon, walks over and places his glasses on the bar, and returns and shoots himself. He placed the butt of the rifle on the floor, the muzzle against his chin, and reaches down and pulls the trigger with his left hand. At this time, the deceased fell from the chair, causing it to fall on its side and the weapon to fall to the floor. No one else is seen in the video.

(D224.)

medical certainty, the insured was sane, as defined by knowing the difference between right and wrong, at the time of his suicide on 9/28/09." (D820)

In support of her first appeal, Plaintiff submitted an opinion from Dr. John H. Wisner, ("Dr. Wisner") a professor and psychiatrist at the University of Kansas School of Medicine. (D257-275) Dr. Wisner reviewed the death certificate, autopsy report, video recording of Decedent's actions, and his medical records, and conducted telephone interviews of Plaintiff for 20 minutes and Jim Bowen for 25 minutes. Dr. Wisner concluded Decedent suffered from a mental disease - "Major Depressive Disorder." (D258) It was Dr. Wisner's opinion that Decedent's suicide was "a direct result of mental illness," and that he died while suffering from a severe mental illness which affected his "cognitive ability and volitional freedom." (D259)

In response, Prudential contacted Decedent's treating psychologist, Dr. J. Gibson Henderson, to give his opinion on Decedent's sanity at the time of his suicide. (D285-286) Dr. Henderson stated Decedent suffered from "Major Depressive Disorder;" however, he did "not consider a person who suffers from Major Depressive Disorder to be insane." (D288) Dr. Henderson stated that he believed Decedent was "sane" when he last saw him on September 18, 2009. (D288)

Prudential also obtained an independent peer review from Dr. Stuart Gitlow ("Dr. Gitlow"), a board certified psychiatrist. (D808-814) Dr. Gitlow noted Decedent had no record of cognitive difficulties and was not intoxicated at the time of his suicide. (D812) Rather, as Dr. Gitlow noted, Decedent carried out his suicide in a "well-organized manner, sending a text message to his wife and practicing his act in such a way as to achieve his goal." (Id.) It was Dr. Gitlow's opinion that Decedent "knew and intended that death would be the result of this act," and "there is no evidence to suggest he was unable to understand the moral character, general nature, consequences and effect of the act." (Id.) Dr. Gitlow noted that Decedent was able to act

and behave in a manner that suggested his mood was normal. Specifically, Decedent told his treating psychologist that he had discontinued his medication and was functioning well and Plaintiff confirmed this. (Id.). Dr. Gitlow further opined that, because Decedent had been considering taking his life for many months, and because this was a carefully planned and organized event, it was not an "insane impulse." (D812-813) Finally, Dr. Gitlow opined that there was no medical evidence to suggest Decedent was "unable to distinguish between right and wrong." (D813) Rather, "his final text message to his wife and his discussion about suicide with his psychologist indicate his understanding as to what the act would result in and would mean." (Id.) Dr. Gitlow noted such behavior indicates "that [Decedent] felt it to be the right decision for him though others might interpret his decision to have been wrong," and was the result of a meaningful choice. (Id.)

Prudential then empaneled a three-person appeal team to review all of the evidence and discuss the claim. It was unanimously agreed that Prudential's original decision should be upheld because Decedent's death was not the result of an "accidental bodily injury," but rather from "suicide while sane." (D823)

In support of her second appeal, Plaintiff submitted a report from Dr. Michael Jarvis ("Dr. Jarvis"), a psychiatrist, professor, and Vice Chairman for Clinical Affairs at the Washington University School of Medicine. (D847-864) Dr. Jarvis reviewed a number of documents, including Dr. Gitlow's advisory report, a memorandum from Plaintiff 's counsel describing relevant case law, the investigative report from the Medical Examiner's Office, and Decedent's medical records. It was Dr. Jarvis's opinion that Decedent's suicide was the "natural result of his mental illness" and that the suicide was "not voluntary," but was instead the result of an "irresistible impulse." (D854)

Prudential empaneled a second, different, three-person appeal team to review the claim and, once again, it was unanimously agreed that Prudential's original decision should be upheld. (D868-870; D877-879)

In her opposition to Prudential's motion, Plaintiff argues that four doctors, Dr. Wisner, Dr. Jarvis, Dr. Henderson, and Dr. Ahmed[6], have all concluded Decedent suffered from Major Depressive Disorder and that Prudential does not dispute this. Not all persons suffering from diagnosable mental diseases or impairments are, however, necessarily "insane" as that term is used in Missouri suicide cases. Harris v. General American Life Ins. Co., 902 F.Supp. 1007, 1010-11 (E.D. Mo. 1995). As the district court explained in Harris, because "insanity is viewed as vitiating the decedent's intent to take his or her own life," the question is "whether decedent was capable of knowing the difference between right and wrong at the time of the act," and whether the decedent was "impelled to commit suicide by an insane impulse." Id. (internal citations and quotation marks omitted). The facts of record surrounding Decedent's suicide do not show that he did not understand the difference between right and wrong. As discussed above, in his final message to Plaintiff, Decedent told her he was sorry and apologized. Further, the methodical way in which Decedent carried out his plan to take his life is contradictory to a compulsion to commit suicide by an insane impulse. See, Harris, 902 F.Supp. at 1011.

Prudential argues Plaintiff's experts' opinions have little probative value because neither doctor met or treated Decedent. Competing experts' conclusions, while helpful, are not determinative of the issue of sanity. Id. Again, when reviewing for abuse of discretion, "[t]he requirement that the plan administrator's decision be reasonable should be read to mean that a

_____

[6]Dr. Malik Ahmed conducted a psychiatric evaluation of Decedent upon his admission to St. John's Mercy Hospital in January 2009, after he attempted suicide, and diagnosed severe mental depression.

decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." <u>Green</u>, 646 F.3d at 1050 (quoted case and internal quotation marks omitted).

### D. Plaintiff as Plan Beneficiary

Prudential also argues Plaintiff has not established entitlement to payment of AD&D benefits because Decedent assigned the benefits from the insurance under the Group Contract to Chrysler Credit Corporation and to Chrysler Financial Company, LLC, including an assignment of the policy as collateral. (D17; D42; D47) In a letter to Prudential dated December 1, 2009, Chrysler Financial made a formal demand on the assignments. (D46) On February 11, 2010, Prudential was advised that Chrysler was the assignee of Decedent's benefits and that any future payments should be directed to Chrysler Financial. (D70-71) In response, Plaintiff submitted a "Release of Assignment of Group Insurance" (Doc. No. 37-1) by TD Auto Finance, LLC  (formerly Chrysler Financial). Because the Court has determined that Decedent's death is not a covered loss under the Plan, it need not reach this issue.

### Conclusion

This Court's "duty is to determine whether [Prudential's] decision was supported by substantial evidence, not to weigh the evidence anew." <u>See</u>, <u>Green</u>, 646 F.3d at 1053. Based on the record as a whole, the Court concludes that substantial evidence supports Prudential's decision to deny Plaintiff's claim for AD&D benefits and that "a reasonable person *could* have reached a similar decision." <u>See</u>, <u>Green</u>, 646 F.3d at 1050. As a result, Prudential did not abuse its discretion in denying Plaintiff's claim on the grounds that Decedent was sane at time of his suicide and thus his death was not an accident. The Court will, therefore, grant Prudential's motion for summary judgment on Plaintiff's ERISA claims and deny Plaintiff's motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on the ERISA Record [30] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Carol A. Van Hoogstraat's Motion for Summary Judgment [28] is **DENIED**.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 24th day of October, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE